

FILED
MAR 2 7 2014
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ARDEN WENDELL PAWNEE LEGGINS, ) | Civ. 12-4139-LLP |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MATT EGGERT, Unit Coordinator, Sioux ) | |
| Falls State Prison, in his individual capacity; ) | |
| DR. RUGIER, Health Service Doctor, Sioux ) | ORDER GRANTING MOTIONS FOR |
| Falls State Prison, in his individual capacity; ) | SUMMARY JUDGMENT |
| HEAD NURSE JENNIFER, Health Service ) | |
| Head Nurse, Sioux Falls State Prison, in her ) | |
| individual capacity; and ) | |
| SCOTT McPHERSON, Doctor at Core ) | |
| Orthopedics Avera Medical Group, in his ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Arden Wendell Pawnee Leggins, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. On July 27, 2012, Leggins filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983. Docket 1. Leggins amended his original complaint on December 10, 2012 (Dockets 9), which he supplemented on December 17, 2012 (Docket 10). The Court screened Leggins's amended complaint shortly thereafter and found that all but one of Leggins' claims survived initial review pursuant to 28 U.S.C. § 1915. Docket 11.

Nonetheless, with the Court's permission (Docket 24), Leggins filed a second amended complaint on May 16, 2013, specifically requesting that the court terminate Defendants Fedderson and Fate and realleging the following: (1) Matt Eggert violated the First Amendment by tampering with Leggins' legal mail; (2) Dr. Regier violated the Eighth Amendment by deliberately disregarding Leggins' serious medical needs; and (3) Nurse Jennifer violated the Eighth Amendment by deliberately disregarding Leggins' serious medical needs. Docket 26. Leggins supplemented his second amended complaint on May 22, 2013, to add a claim against Dr. Scott McPherson for violating the Eighth Amendment by deliberately disregarding Leggins' serious medical needs. Docket 28.

On August 14, 2013, Defendants Matt Eggert, Dr. Eugene Regier, and Jennifer Hartmann (SDSP Defendants) moved for summary judgment.[1] Docket 52. Soon thereafter, on August 30, 2013, Defendant Scott McPherson similarly moved for summary judgment. Docket 61. Leggins opposes both motions. Docket 67. For the reasons set forth herein, the Court grants Defendants' motions for summary judgment.

## BACKGROUND

Viewed in a light most favorable to Leggins, the nonmoving party, the facts are as follows[2]:

Leggins entered the SDSP on August 6, 2006, to serve a three-year sentence for Possession of a Controlled Substance. Docket 54 at ¶ 1. Pursuant to a parole revocation in 2007, Leggins remains in custody at SDSP. *Id.* Prison officials at SDSP manage inmate affairs pursuant to established policies. To operate the prison mail system, prison officials adhere to the South Dakota Department of Corrections (SDDOC) Inmate Living Guide. As is relevant to this case, the SDSP's policy on incoming legal or privileged correspondence is as follows:

> B. Privileged/legal correspondence directed to an adult offender will be opened by unit staff in the presence of the adult offender.
> C. Privileged/legal correspondence for adult offenders will be inspected by unit staff for contraband and to determine the genuineness of the addressor.

---

[1] In their motion and corresponding brief for summary judgment (Dockets 52, 53), the SDSP Defendants address claims that were asserted and defendants who were named in Leggins' original complaint (Docket 1) and first amended complaint (Docket 9). However, "[i]t is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Can Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)); *see also Stockdale v. Stockdale*, No. 4:09-CV-1773, 2009 WL 367551, at *1 (E.D. Mo. Feb. 11, 2009) ("[T]he filing of an amended complaint replaces the original complaint, and any claims that are not realleged in an amended complaint are deemed abandoned." (citation omitted)). Therefore, the Court will restrict its analysis to the claims alleged and defendants named in Leggins' second amended complaint (Docket 26).

[2] Pursuant to Local Rule 56.1.D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."

>  1. Staff **will not read** the privileged/legal correspondence but will inspect the contents of both incoming and outgoing mail, page-by-page and in the presence of the offender to prevent the introduction of contraband and to confirm the contents are privileged/legal and have been sent by addressor.

Docket 52-1 at 4 (citations omitted) (emphasis in original). The SDSP employs a similar policy on outgoing legal correspondence:

>  C. Outgoing privileged/legal correspondence for adult offenders does not need to have postage attached and must be inspected by unit staff before being sealed and sent out.
>  1. Each adult offender housing unit will establish a regular time on weekdays for offenders to bring privileged/legal correspondence (with an unsealed, addressed envelope) to the unit coordinator or designee. Staff will make rounds to pick up privileged/legal correspondence in segregation units.
>  2. Outgoing privileged/legal correspondence from adult offenders will be inspected by staff for contraband.
>      a. Staff will not read the privileged/legal correspondence but may inspect the contents page-by-page to prevent the introduction of contraband.
>      ...
>      b. The inspection of privileged/legal correspondence will always take place in the presence of the offender.
>  3. If the contents of the outgoing privileged/legal correspondence are determined to be privileged/legal in nature, the correspondence will be sealed in the envelope. Unit staff will indicate on the outside of the envelope that is approved to be sent out by the mailroom.

Docket 52-1 at 7–8.

Leggins attempted to send legal mail to the Minnehaha County Clerk of Courts sometime prior to April 4, 2012. Docket 1-1. Nonetheless, on April 4, 2012, Leggins received a letter from the Minnehaha County Clerk of Courts, which indicated that the Clerk of Courts had received an unsealed, empty envelope from Leggins. *Id.* To address the issue, Leggins filed both an informal resolution request and a request for administrative remedy. Dockets 1-1; 1-2. In response to the informal resolution request, Leggins was notified that Eggert had secured Leggins' legal mail. Docket 1-1. Moreover, Leggins was informed that if he had concerns about how legal mail was being handled, he should wait until a time in which he could seal the mail himself. *Id.* In response

to his request for administrative remedy, Leggins was reminded that he had the option to seal legal mail in the presence of staff. Docket 1-3. If he chose to send it another way, however, staff would mail it through the normal mailroom procedures. Docket 1-3. Leggins appealed the issue to the Secretary of Corrections on May 17, 2012, but was later notified that his issue was not appealable. Dockets 1-4; 1-5.

To manage inmate health, officials at SDSP follow the South Dakota Department of Health's (SDDOH) Adult Offender Health Plan. *See* Dockets 52-7; 52-8. As is relevant to this case, the health plan requires particular services to be pre-authorized through the utilization management process. Docket 52-8. Such services include "[r]eferrals for specialty physician consultations . . . ; [r]eferrals for outpatient surgery and diagnostic studies that can not be provided within a DOC facility . . . ; [and] [c]ommunity inpatient surgical procedures and hospitalizations." *Id.* When an inmate requests any of the aforementioned services, the request "is reviewed by the Medical Director and/or the utilization management process at the major facility level." *Id.* If an inmate is dissatisfied with the determination, the inmate "may grieve the . . . determination through the DOH's established grievance program." *Id.*

While on parole in 2010, Leggins sustained an injury to his right hand.[3] Docket 55-1 at 56, 61. Leggins reported this injury to medical staff when he returned to custody at SDSP. *Id.* at 60. At that time, medical staff treated him for pain and requested Leggins' medical records. *Id.* On October 28, 2010, medical staff followed up with Leggins and noted that, according to his medical records, Leggins "did not injure any tendons which required surgical repair rather than . . . physical therapy." *Id.* Leggins was next seen by the Occupational Therapy Hand Clinic at Avera McKennan Hospital on December 13, 2010. *Id.* at 63–64. During that appointment, medical staff evaluated the strength and range of motion in Leggins' right hand; educated Leggins about a

---

[3] The Emergency Room Nurse Record from Pine Ridge Indian Health Services, which is dated May 26, 2010, notes that Leggins presented with a cut on the back of his right hand. Docket 55-1 at 56. Leggins apparently received this injury from a machete three days prior to visiting the emergency room. *Id.* According to the triage nurse who prepared the Emergency Room Nurse Record, Leggins was able to move his right index finger, but had trouble with the other digits on his right hand. *Id.* The treating physician noted that Leggins' tendon was exposed and partially severed. *Id.* at 58. To treat Leggins' injury, the treating physician bandaged Leggins' hand and prescribed various medications. *Id.*

4

home exercise program; requested that the penitentiary provide Leggins with Theraputty and an orthoplast splint; and devised a therapy plan which involved three, 45-minute therapy sessions per week for one month. *Id.* On December 16, 2010, medical staff at SDSP followed through with the occupational therapist's request and ordered Leggins an orthoplast splint and Theraputty. *Id.* at 65.

Leggins was seen by occupational therapists at Avera McKennan Hospital on various occasions throughout 2011, but his condition did not improve.[4] *See* Docket 55-1 at 66-67. Finally, on May 31, 2012, an occupational therapist at Avera McKennan Hospital determined that Leggins had met his goals with respect to acquiring custom fabricated splints and learning range of motion exercises. *Id.* at 61–62. Accordingly, the occupational therapist discharged Leggins from Occupational Therapy Services and recommended that Leggins "may benefit [from] further evaluation by an orthopedic physician for further assessment and treatment recommendations." *Id.* at 62. Several months later, on February 8, 2013, Dr. Eugene Regier similarly concluded that Leggins needed to be seen by an orthopedic physician. *Id.* at 68.

Pursuant to the SDDOH Adult Offender Health Plan, Dr. Regier submitted a consultation request through the utilization management process, and on February 27, 2013, Leggins was seen by Dr. Scott McPherson at Core Orthopedics. *Id.* at 68–69. After examining Leggins' right hand and wrist, Dr. McPherson recommended that Leggins "either do nothing and live with the present dysfunction or proceed to surgery for exploration for possible tenolysis, possible EDC repair or, more likely, he may need a tendon transfer . . . to restore active extension." *Id.* In light of Dr. McPherson's evaluation and corresponding treatment recommendation, Dr. Regier submitted a surgery request through the utilization management process. Dockets 55-1 at 59; 52-11 at ¶ 16. In considering the request, Dr. Mary Carpenter, the SDDOH Correctional Health Care Medical Director, reviewed Dr. McPherson's notes and discussed the matter with him. Dockets 55-1 at 59; 52-14 at ¶ 9. Based on Dr. McPherson's opinion "that there [would] be no change in outcome whether [the surgery] [was] done now or after [Leggins] is released," Dr. Carpenter denied the

---

[4] In fact, on March 17, 2011, Leggins submitted a sick call request complaining of a swollen hand and pain so severe that he became ill. Docket 55-1 at 71.

request for surgery.[5] Dockets 55-1 at 59; 52-14 at ¶¶ 9–10. Consequently, Leggins continues to endure chronic pain and a limited range of motion in his right hand. Dockets 26 at 6–9; 67 at 31.

Lastly, the distribution of pharmaceutical medications at SDSP is governed by the SDDOH's general policy on pharmaceutical operations. Docket 52-4. As is relevant to this case, the pharmaceutical operations policy explicitly requires that all Wellbutrin be crushed. *Id.* at 4. Despite established policy, however, Leggins has repeatedly requested that his medications not be crushed because it causes mouth sores and severe physical and mental strain. Dockets 26; 52-10 at ¶ 30; 52-18 at 46, 55. In response to Leggins' requests, staff have informed Leggins that in accordance with DOC policy and due to important security needs, Wellbutrin will continue to be crushed. Dockets 52-18 at 46, 55.

In addition to lodging complaints within SDSP, Leggins wrote to the Food and Drug Administration (FDA) to address his concerns regarding the crushing of medications. Leggins received a response from the FDA on June 7, 2012, which noted that the labeling for bupropion[6] advised patients to "swallow bupropion hydrochloride extended-release tablets whole so that the release rate is not altered." Docket 9-1 at 23. The labeling also indicated that tablets should not be chewed, divided, or crushed, "as this may lead to an increased risk of adverse effects, including seizures." *Id.* Finally, the FDA notified Leggins that "the laws governing these type of practices are controlled at the state level by the State Boards of Pharmacy and/or Boards of Medicine, not the FDA." *Id.* Leggins apparently shared these findings with Dr. Davidson at the South Dakota Department of Social Services, but was once again told that Wellbutrin would be crushed. Dockets 52-10 at ¶¶ 35–36; 52-18 at 46. Dr. Davidson also notified Leggins that there were other medications Leggins could take in place of Wellbutrin if he chose not to accept crushed Wellbutrin. *Id.*

---

[5] In denying Leggins' request for surgery, Dr. Carpenter also noted that Leggins had refused the surgical care that had been arranged for him just after he sustained his right-hand injury. Docket 55-1 at 59.

[6] The Court understands that Wellbutrin is a brand of bupropion. Docket 9-1 at 20.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." Id.

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Defendants submitted separate motions for summary judgment. Dockets 52, 61. The Court will address each motion separately.

## I. SOUTH DAKOTA STATE PENITENTIARY DEFENDANTS

On August 14, 2013, Defendants Matt Eggert, Dr. Eugene Regier, and Jennifer Hartmann (SDSP Defendants) filed a motion for summary judgment. Docket 52. Therein, the SDSP Defendants assert they are entitled to judgment as a matter of law because they did not violate Leggins' constitutional rights. Docket 53 at 41–43. More specifically, the SDSP Defendants claim that (1) Defendant Eggert did not tamper with Leggins' legal mail; (2) Defendant Regier did not act with deliberate indifference toward Leggins' serious medical need; and (3) Defendant Hartmann did not act with deliberate indifference toward Leggins' serious medical need. Docket 53 at 13–18, 24–35.

Leggins responded to the SDSP Defendants' motion for summary judgment on September 18, 2013. Docket 67. In his response, however, Leggins refutes very few of the SDSP Defendants' arguments. Docket 67 at 23–37. Instead, Leggins raises new claims regarding the inadequate attention given to Leggins' recurring nightmares, the risk of harm posed by other inmates, and the manner in which Mental Health Services manages inmates with mental illnesses. *Id.* at 1–23. For the reasons set forth below, the SDSP Defendants' motion for summary judgment is granted.

### A.  Denial of Legal Correspondence[7]

The First Amendment protects prisoner correspondence with outsiders. *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974). Consequently, censorship of prisoner mail is unconstitutional unless "(1) the regulation or practice furthers 'an important or substantial governmental interest unrelated to the suppression of expression,' such as institutional security, and (2) 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential

---

[7] Leggins classified Count 1 of his second amended complaint as a claim arising under the Americans with Disabilities Act (ADA). Because Count 1 of the second amended complaint merely alleges that "Mr. Eggert has exclued [sic] me from any benefits due to my disability," the Court has construed Count 1 as a claim arising under the First Amendment right to correspondence. Leggins' conclusory allegation is insufficient to support an ADA claim.

8

to the protection of the particular governmental interest involved.'" *Valiant-Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir. 1987) (quoting *Procunier*, 416 U.S. at 413). Notably, prison officials are generally not permitted to read inmates' legal mail. *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994).

In the instant case, Leggins claims that Defendant Eggert stopped by his jail cell around April 4, 2012, and collected a legal envelope that Leggins wanted to mail to the Minnehaha Clerk of Courts. Docket 26 at 3. Although Eggert did not have the necessary seal with him at that time, he assured Leggins that he would "take care of it." Sometime thereafter, Leggins received the envelope back from the clerk of courts along with a letter notifying Leggins that the envelope he had previously sent was not sealed "and whatever was in [the] letter fell out." Leggins therefore alleges that Eggert tampered with his legal mail in violation of the First Amendment.

The SDSP Defendants, on the other hand, assert that Matt Eggert did not tamper with Leggins' legal mail, but rather followed established procedures at SDSP for sending legal mail. Docket 53 at 13–15. To support their argument, the SDSP Defendants have submitted a copy of the SDDOC's policy on outgoing legal correspondence, which establishes that staff is to make rounds to pick up legal correspondence from inmates in segregation units. Docket 52-1 at 7. The policy further establishes that although staff may not read outgoing legal correspondence, staff will inspect outgoing legal correspondence for contraband, and may do so by inspecting the contents page-by-page. *Id.* at 8. Nonetheless, "[t]he inspection of privileged/legal correspondence will always take place in the presence of the offender." *Id.*

According to the affidavit of Matt Eggert, Eggert conformed to the following routine in his role as a Correctional Sargent at the SDSP:

> In accordance with established policy, [Eggert] would conduct daily rounds during which [he] collected inmates' outgoing privileged/legal correspondence. The inmate would simply hand [him] the mail, along with an addressed envelope. [Eggert] would then inspect the same for contraband. Once it was determined that the mail did not contain contraband and was, in fact, privileged/legal in nature, [Eggert] would then place it in the envelope, and, with an embossed stamp, mark the envelope as having been approved to be sent out. [Eggert] would also date the back of the envelope and affix his signature thereto.

9

Docket 52-15 at ¶ 7.[8] Prison staff follow a similar routine in the distribution of incoming legal correspondence—staff open and inspect incoming legal correspondence in the presence of inmates to check for contraband and confirm the genuineness of the addressor. *Id.* at ¶ 10.

Although Eggert does not attest to having mailed the envelope in question, he recalls having delivered the envelope in question, which had been sent to Leggins by the Minnehaha County Clerk of Courts. Docket 52-15 at ¶ 12. "Upon opening the same, Inmate Leggins showed [Eggert] the letter he had received from the Clerk of Courts, along with the empty envelope that had been returned to him, and maintained that [Eggert] had 'made a mistake with his legal mail.'" *Id.* Eggert therefore "inspected the envelope in question and determined that there was no embossed stamp affixed thereto indicating that it had been, as required by policy, inspected/ processed and determined to be privileged/legal correspondence." *Id.* at ¶ 13. Also missing from the envelope in question was Eggert's signature and the date of inspection. *Id.*

In his reply to the SDSP Defendants' motion for summary judgment, Leggins merely realleges that Defendant Eggert tampered with his legal mail. Docket 67 at 23. Leggins offers no additional evidence to support this assertion, but represents that he has three witnesses who "will get on the stand and speak the truth." *Id.* Leggins does not assert that Eggert tampered with his legal mail on more than one occasion,[9] nor does he provide any evidence of improper motive or resulting interference with his access to the courts.[10] *See Gardner v. Howard*, 109 F.3d 427, 431

---

[8] In addition to conducting daily rounds for purposes of collecting legal correspondence from inmates in the segregated housing unit, Eggert also frequently conducted other rounds in the segregated housing unit "either to check on/talk with the inmates housed therein or to respond to various other requests/concerns." Docket 52-15 at ¶ 9. Because these rounds are not associated with the collection of legal correspondence, Eggert "does not carry the embossed stamp needed in order to process an inmate's privileged/legal mail." *Id.*

[9] Leggins generally alleges that "on two other times my legal mail was tampered with," but Leggins does not identify the individual responsible for this alleged conduct, nor does he provide facts to support this allegation. Docket 67 at 23. The general assertion is therefore insufficient to support Leggins' legal correspondence claim as it relates to Eggert. *See Martin v. Sargent*, 780 F.3d 1334, 1338 (8th Cir. 1985) (dismissing § 1983 claims for failure to allege personal involvement in or direct responsibility for alleged conduct).

[10] Leggins attached several correspondences to his first amended complaint, one of which indicates that the Minnehaha County Clerk of Courts gave Leggins an opportunity to resubmit his

(8th Cir. 1997) ("[A]n 'isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.'" (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)). Based on the information in the record, the Court finds that Defendant Eggert is entitled to summary judgment on Leggins' First Amendment legal correspondence claim. There is no showing of tampering with legal mail other than the allegation itself. The receipt by the clerk of courts of an empty envelope that Eggert did not sign is not evidence of Eggert tampering with Plaintiff's legal mail. Even assuming Eggert tampered with Leggins' legal mail on the occasion in question, Leggins has provided no evidence of improper motive or resulting interference with his right to access the courts.

### B. Inadequate Medical Care

"To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted). "In a deprivation of medical care case, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Id.* (citing *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995)). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"[11] *Coleman*, 114 F.3d at 784 (quoting *Camberos*, 73 F.3d at 176)). "The determination whether a medical need is sufficiently obvious" requires an analysis of "[t]he prison officials' background knowledge." *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). "When an inmate alleges that a delay

---

request to the court. Docket 10-1 at 12.

[11] The Eighth Circuit has determined that the following circumstances exhibit a serious medical condition: a pregnant inmate who is bleeding and passing blood clots, *see Pool v. Sebastian Cnty., Ark.*, 418 F.3d 934, 945 (8th Cir. 2005); an inmate who is complaining of extreme tooth pain and presenting with swollen, bleeding gums, *see Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); and a diabetic inmate who is experiencing excessive urination, diarrhea, sweating, weight loss, and dehydration, *see Roberson v. Bradshaw*, 198 F.3d 645, 647–48 (8th Cir. 1999). *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Coleman*, 114 F.3d at 784 (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

To establish deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Coleman*, 114 F.3d at 785 (citing *Farmer v. Brennen*, 511 U.S. 825, 847 (1994)). "'[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.'" *Id.* (citing *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)).

### 1.     Dr. Regier

Leggins alleges that Dr. Regier acted with deliberate indifference toward a serious medical need when he denied Leggins a surgical operation that had been recommended by another physician. Docket 26 at 5–9. Dr. Regier, however, contends that Leggins' allegation represents nothing more than a disagreement with his course of treatment, and as such, does not support a deliberate indifference claim. Docket 53 at 34. Further, Dr. Regier argues that Leggins has failed to present verifying medical evidence to establish that the delay in treatment would have a detrimental effect on the condition of his hand. *Id.* at 35. In his reply, Leggins appears to contend that the amount of pain he is experiencing as a result of the delay in treatment is enough to establish that the delay in treatment has a detrimental effect on his condition. Docket 67 at 31.

As the Court concluded in its Order dated January 23, 2014 (Docket 11), Leggins has established that his hand condition constitutes a serious medical need—a physician has indicated that surgery on Leggins' wrist is medically necessary. Docket 63-1 at 1. The Court finds, however, that Leggins has failed to establish that Dr. Regier acted with deliberate indifference toward that serious medical need. Although the record indicates that Dr. Regier was aware of Leggins' hand condition (Docket 52-11), the record does not indicate that Dr. Regier disregarded a substantial risk of serious harm by failing to take reasonable measures to abate it. To the contrary, the record demonstrates that Dr. Regier was the individual responsible for requesting that Leggins be seen by an orthopedic surgeon and for requesting that Leggins be allowed to have

the surgery recommended by Dr. McPherson. Docket 52-11 at ¶¶ 14, 16. The record also demonstrates that it was Dr. Mary Carpenter, the SDDOH Correctional Health Care Director, who was responsible for denying Leggins' request for a surgical procedure. *Id.* at ¶ 18. Leggins has therefore failed to demonstrate that Dr. Regier acted with deliberate indifference toward his serious medical need by denying Leggins a recommended surgical procedure.

But even if Leggins had demonstrated that Dr. Regier was the individual responsible for denying Leggins a recommended surgical procedure, Leggins' deliberate indifference claim would still fail because Leggins has not demonstrated that the denial created an excessive risk to Leggins' health. Leggins merely alleges that, until he receives the recommended surgical procedure, he will continue to suffer from chronic pain in his right hand. Docket 67 at 31; *see also Reed v. Weber*, 10-4069-KES, 2010 WL 3363402, at *4 (D.S.D. Aug. 23, 2010) ("Where pain or discomfort is the sole effect of a delay in treatment, an inmate fails to state a deliberate indifference claim." (citation omitted)). Drs. Carpenter, McPherson, and Regier, on the other hand, all agree that "any delay in performing the requested surgical procedure will not result in any adverse effect to the condition of Inmate Leggins' right hand." Dockets 52-11 at ¶ 19–20; 52-14 at ¶ 10–11; 62 at ¶ 7; *see also Long*, 86 F.3d at 765 ("[N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment." (citation omitted)). What we have, then, is a disagreement between Leggins' preferred course of treatment and the opinion of medical professionals. Because "[d]isagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs," *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993), Dr. Regier is entitled to summary judgment on Leggins' deliberate indifference claim. *See Long*, 86 F.3d at 765 ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." (citations omitted)).

### 2.     Jennifer Hartmann

Leggins alleges that Jennifer Hartmann acted with deliberate indifference toward a serious medical need when she continued to crush his Wellbutrin tablets despite orders to the contrary. Docket 26 at 11-12. The SDSP Defendants, however, contend that Hartmann never received such orders. Docket 53 at 24–28. Further, the SDSP Defendants represent that pursuant to

pharmaceutical operations policy, all Wellbutrin administered at SDSP must be crushed. *Id.* Leggins does not address the SDSP Defendants' argument in his reply to their motion for summary judgment. Docket 67.

The Court finds that Leggins has failed to state a deliberate indifference claim with regard to the crushing of Wellbutrin. First, Leggins has failed to establish the existence of a serious medical need. Wellbutrin has been prescribed to help Leggins cope with a serious medical need, and to the extent that Leggins cannot handle the side effects of taking such medication, Leggins has been informed that other medications can be taken as a substitute. Docket 52-18 at 46. Nonetheless, the record demonstrates that Leggins has chosen to continue taking Wellbutrin, insisting that he could easily tolerate the possible risks and side effects and even suggesting that he be prescribed a larger dose. *Id.* at 32. Second, Leggins has failed to establish that Hartmann acted with deliberate indifference toward a substantial risk of serious harm. The record demonstrates that Hartmann was never told to discontinue the crushing of Leggins' medications. Docket 52-10 at ¶ 34. Hartmann therefore crushed Leggins' Wellbutrin pursuant to established policy. Dockets 52-4 at 4; 52-10 at ¶ 30. Although Leggins has produced evidence that crushing Wellbutrin tablets may lead to an increased risk of adverse effects, the SDSP Defendants assert that the FDA's letter pertains to extended-release tablets, which Leggins does not take. Docket 52-10 at 36. Because Leggins has not responded to this argument, Leggins has failed to demonstrate that Hartmann disregarded a known risk when she continued to crush Wellbutrin in accordance with prison policy. Accordingly, Jennifer Hartmann is entitled to summary judgment on Leggins' deliberate indifference claim.

## II.   DEFENDANT SCOTT MCPHERSON

On August 30, 2013, Defendant Scott McPherson filed a motion for summary judgment, asserting that he did not act with deliberate indifference toward Leggins' serious medical need and was thus entitled to summary judgment on Leggins' Eighth Amendment claim. Dockets 59, 65. Leggins responded to Dr. McPherson's motion for summary judgment on September 18, 2013. Docket 67. In his response, Leggins asserts that Dr. McPherson has acted with deliberate indifference toward a serious medical need by denying or delaying a surgery that Dr. McPherson deemed medically necessary. *Id.* at 31, 36. Although Leggins acknowledges that delaying surgery

will not affect the outcome of the surgery, Leggins believes a delay in treatment "will result in further significant injury and the unnecessary and wanton infliction of pain." *Id.* at 30.

As previously stated, to prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Coleman*, 114 F.3d at 784 (citing *Camberos*, 73 F.3d at 175). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Camberos*, 73 F.3d at 176)). To establish deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 785 (citing *Farmer*, 511 U.S. at 847).

Again, Leggins has established the existence of a serious medical need because the condition in his right hand was diagnosed as requiring treatment. But as with Dr. Regier, Leggins has failed to demonstrate that Dr. McPherson acted with deliberate indifference toward Leggins' serious medical need. Although it is undisputed that Dr. McPherson knew about Leggins' medical needs (Docket 62 at ¶¶ 5–6), Leggins has not established that McPherson disregarded a substantial risk of serious harm. As the record demonstrates, Dr. McPherson recommended that Leggins "proceed to surgery," but also noted that Leggins could "do nothing and live with the dysfunction. Docket 62 at ¶ 6. The final decision with regard to Leggins' course of treatment, however, did not rest with Dr. McPherson, but with Dr. Carpenter. Docket 52-14 at ¶ 10. Leggins has therefore failed to demonstrate that Dr. McPherson acted with deliberate indifference toward his serious medical need by denying Leggins a surgical procedure.

Even so, had Leggins demonstrated that Dr. McPherson was responsible for denying Leggins a surgical procedure, Leggins' deliberate indifference claim would still fail because Leggins has not demonstrated that the denial created an excessive risk to Leggins' health. Leggins merely alleges that, until he receives the recommended surgical procedure, he will continue to suffer from chronic pain in his right hand. Docket 67 at 31. Dr. McPherson, on the other hand, asserts that although Leggins' condition is a "'chronic long standing problem,' . . . the likelihood of success pursuant to a surgical procedure would be the same if the surgery was done now or at

15

some point in the future." Docket 62 at ¶ 10. Dr. McPherson communicated his medical opinion to Leggins on May 15, 2013, in a letter that read as follows:

> If I fix it now, a month from now or 3 years from now the result will be the same and waiting to fix will not affect the results. I was asked by the administration if waiting to do your surgery would affect the outcome and my answer was it would not. I do believe your surgery is medically necessary and will improve your hand function but I cannot honestly say it has to be done right now.

Docket 63-1 at 1. Two other physicians—Drs. Carpenter and Regier—are in agreement with Dr. McPherson's medical judgment (Dockets 52-11 at ¶ 19–20; 52-14 at ¶ 10–11), and Leggins has offered no evidence to refute their findings. In the absence of evidence demonstrating that a delay in treatment would have a detrimental effect[12] on the condition of Leggins' right hand, Leggins has merely established that he disagrees with Dr. McPherson's medical judgment. Because "[d]isagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs," *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993), Dr. McPherson is entitled to summary judgment on Leggins' deliberate indifference claim. *See also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." (citations omitted)).

## CONCLUSION

Leggins has not established a genuine issue of material fact with regard to his claim that Defendant Eggert tampered with his legal mail. Further, Leggins has not established a genuine issue of material fact with regard to his claim that Defendants Regier, Hartmann, and McPherson acted with deliberate indifference toward serious medical needs. Accordingly, it is

ORDERED that the SDSP Defendants' motion for summary judgment (Docket 52) is granted.

IT IS FURTHER ORDERED that Defendant Scott McPherson's motion for summary judgment (Docket 61) is granted.

---

[12] As previously noted, if the only effect of a delay in treatment is pain and discomfort, the plaintiff fails to state a deliberate indifference claim. *Reed v. Weber*, 10-4069-KES, 2010 WL 3363402, at *4 (D.S.D. Aug. 23, 2010) (citation omitted).

IT IS FURTHER ORDERED that Defendant Scott McPherson's motion to amend/correct his answer (Docket 59) is dismissed as moot.

IT IS FURTHER ORDERED that Leggins' motion for trial (Docket 70), motion to enter declaration (Docket 73), motion to appoint counsel (Docket 76), motion to deny defendants' qualified immunity (Docket 77), motion for deposition (Docket 78), and motion to compel (Docket 81) are dismissed as moot.

Dated this 27th day of March, 2014.

BY THE COURT:

*[signature]*

LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE

ATTEST:
JOSEPH HAAS, CLERK

BY: *[signature]*
DEPUTY